**Affirmed and Memorandum Opinion filed October 4, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00233-CV

## ANTHONY E. MALUSKI, Appellant

### V.

## RUSHMORE LOAN MANAGEMENT SERVICES, LLC, WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1, AND MACKIE WOLF ZIENTZ & MANN, P.C., Appellees

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-70366**

## MEMORANDUM OPINION

Anthony E. Maluski appeals the grant of summary judgment in favor of appellees, Rushmore Loan Management Services, LLC, Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, as trustee for Normandy Mortgage Loan Trust, Series 2015-1, and Mackie Wolf Zientz & Mann, P.C. Maluski contends that the trial court erroneously granted summary judgment because (1) appellees did not

conclusively disprove Maluski's causes of action; (2) appellees did not conclusively prove their causes of action; and (3) "conclusive evidence shows that Maluski's statute of limitations and claim preclusion arguments are correct." We affirm.

## BACKGROUND

This case involves a dispute arising out of Maluski's default on a home equity loan in 2005. Maluski signed a Texas Home Equity Note, Texas Home Equity Affidavit and Agreement, and Texas Home Equity Security Instrument (the "loan agreement") in favor of New Century Mortgage Corporation on June 25, 1999, for a $116,250.00 loan that encumbered his residence located at 1015 Bayland Avenue, Houston, Texas 77009 (the "property").

A year later, the note and security instrument were transferred to Firstar Bank Milwaukee, N.A., as Trustee for Salomon Brothers Mortgage Securities VII, Inc. Floating Rate Mortgage Pass-Through Certificates Series 1999-NC4. In June 2005, the note and security instrument were transferred to U.S. Bank, N.A., as Trustee, successor by merger to Firstar Bank, N.A. successor in interest to Firstar Bank Milwaukee, N.A., as Trustee for Salomon Brothers Mortgage Securities VII, Inc. Floating Rate Mortgage Pass-Through Certificates Series 1999-NC4.

Maluski defaulted on the note in June 2005. U.S. Bank sent Maluski a Notice of Acceleration on December 27, 2005. Maluski filed suit against U.S. Bank in 2006 contending the note and lien are invalid because they violate the Texas Constitution. U.S. Bank removed Maluski's suit to federal court and filed a counterclaim seeking foreclosure of the property. While the suit was pending in federal court, U.S. Bank transferred the note and security instrument to Property Asset Management, Inc. ("PAMI") in August 2007.

PAMI intervened in the suit; it filed a complaint in November 2007 and sought

2

an order permitting foreclosure on the property pursuant to the security instrument or an order for judicial foreclosure. The parties filed motions for summary judgment. The district court granted PAMI's summary judgment motion and denied Maluski's summary judgment motion. The district court signed a final judgment on February 5, 2009, ordering that Maluski take nothing and dismissing his claims, and ordering that PAMI

> pursuant to the Texas Home Equity Adjustment Rate Note ("Note") in the original principal amount of $116,250.00, and Texas Home Equity Security Instrument ("Security Instrument") securing the Note, both executed by Plaintiff Anthony E. Maluski on June 25, 1999, is authorized pursuant to the Note, Security Instrument, and TEX. PROP. CODE § 51.002, forthwith to foreclose on the property securing the Note indebtedness . . . and . . . further order[ing] . . . Intervenor PAMI shall have and recover of and from the proceeds of sale of the above described real property, the outstanding unpaid balance of the Note and accrued interest in the amount of $128,095.93 as of March 6, 2008, plus additional prejudgment interest in accordance with the terms of said Note from March 6, 2008, to the date of this Judgment, plus reasonable attorneys' fees incurred by Intervenor PAMI . . . .

Maluski appealed the district court's judgment, and the United States Court of Appeals for the Fifth Circuit affirmed the judgment in October 2009.

No action toward foreclosure of the property was taken by PAMI. It later transferred the note and security instrument to Lehman Brothers Holding Inc. Lehman transferred the note and security instrument to Lex Special Assets, LLC. Lex transferred the note and security instrument to Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-17. And Christiana Trust transferred the note and security instrument to Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, as trustee for Normandy Mortgage Loan Trust, Series 2015-1 in September 2015.

Wilmington Savings hired Rushmore Loan Management Services, LLC as its

3

mortgage servicer; and Rushmore hired the law firm of Mackie Wolf Zientz & Mann, P.C. to "represent [Rushmore as authorized by Wilmington Savings] in collecting the indebtedness and enforcing the Deed of Trust" because a "default occurred under the terms of the Note." Mackie Wolf Zientz & Mann, P.C., as a debt collector, sent Maluski a Notice of Posting and Sale in September 2015, informing Maluski that (1) it had been retained by Rushmore to collect on the defaulted note; (2) Maluski could "pay off the loan and prevent foreclosure;" and (3) on "11/03/2015, the Trustee or Substitute Trustee will sell to the highest cash bidder, the property legally described in the enclosed Notice of Foreclosure Sale." Mackie Wolf Zientz & Mann, P.C. sent Maluski another Notice of Posting and Sale in November 2015 that a trustee sale of the property is scheduled for December 1, 2015.

In response, Maluski sued Rushmore, Wilmington Savings, and Mackie Wolf Zientz & Mann, P.C. (collectively, "Wilmington") on November 23, 2015, requesting a temporary and permanent injunction to enjoin Wilmington from, among other things, selling the property. Maluski also brought a claim to quiet title and a claim for damages for filing "fraudulent lien claims against Maluski's homestead property." And Maluski asserted a declaratory judgment claim that foreclosure of the property was barred by the statute of limitations and that any obligations Maluski had were extinguished and unenforceable. Wilmington denied Maluski's allegations and asserted affirmative defenses.

Rushmore and Wilmington Savings filed an original counterclaim, asserting (1) a declaratory judgment claim that foreclosure of the property is not time-barred because predecessor in interest, PAMI, filed its complaint in intervention timely within four years of the date of acceleration on November 13, 2007, and Texas Civil Practice and Remedies Code section 16.035(a) provides that suits to recover real property pursuant to a real property lien must be filed within four years of the claim's

4

accrual; (2) a declaratory judgment claim that any limitations period that might apply to Rushmore's and Wilmington Savings' foreclosure efforts pursuant to the federal district court judgment was revived under Texas Civil Practice and Remedies Code section 16.069; (3) a claim to foreclose the lien on the property as provided in the security instrument; and (4) a claim for judicial foreclosure by equitable subrogation.

Rushmore and Wilmington Savings filed a traditional and no-evidence motion for summary judgment, arguing that they are entitled to summary judgment on Maluski's claims and their counterclaims because their foreclosure efforts were not time-barred because they were not required to sell the property within four years of acceleration; instead, they could still foreclose on the property because PAMI brought its suit for recovery of real property pursuant to a real property lien within four years of the acceleration date. Rushmore and Wilmington Savings alternatively argued that they are entitled to summary judgment on their declaratory judgment claim that the limitations period was revived under section 16.069; on their claim to foreclose the lien on the property as provided in the security instrument; and on their claim for judicial foreclosure by equitable subrogation.

Maluski filed a response to Rushmore's and Wilmington Savings' summary judgment motion, arguing that, because the federal court judgment authorized a non-judicial foreclosure sale of the property "pursuant to the Note, Security Instrument, and Tex. Prop. Code § 51.002," the foreclosure sale had to be conducted within four years after the claim accrues pursuant to Texas Civil Practice and Remedies Code section 16.035(b). Maluski argued that only a judicial foreclosure can be conducted four years after the claim accrues pursuant to Texas Civil Practice and Remedies Code section 16.035(a). Maluski also asserted that Rushmore's and Wilmington Savings' claims are barred by res judicata.

Rushmore, Wilmington Savings, and Maluski filed a reply, sur-response, and

5

sur-reply, respectively. The trial court signed an interlocutory order granting Rushmore's and Wilmington Savings' summary judgment motion on November 16, 2016, and ordering that (1) Maluski take nothing on his claims; and (2) Rushmore and Wilmington Savings "may proceed with foreclosure as authorized in the February 5, 2009 Final Judgment from Civil Action No. H-07-055, and as provided in Section 51.002 of the Texas Property Code and in the June 25, 1999 Texas Home Equity Security Instrument, which secured a $116,250.00 loan . . . ."

Mackie Wolf Zientz & Mann, P.C. filed a traditional summary judgment motion, arguing (1) "the same summary-judgment grounds as" Rushmore and Wilmington Savings asserted "that there is no statute-of-limitations bar to foreclosure;" and (2) "a summary-judgment ground on attorney immunity." The trial court signed an order granting Mackie Wolf Zientz & Mann, P.C.'s summary judgment motion on February 3, 2017, and ordering that Maluski take nothing on his claims asserted against the law firm.

Rushmore and Wilmington Savings filed a notice of nonsuit, requesting that the trial court "grant this Notice of Partial Nonsuit and dismiss without prejudice their claim for attorney's fees and dismiss as moot their counterclaim against . . . Maluski for a suit for foreclosure by sheriff's sale and their counterclaim for foreclosure by equitable subrogation." The trial court signed an order granting Rushmore's and Wilmington Savings' notice for nonsuit on March 3, 2017, and dismissing their claim for attorney's fees without prejudice and dismissing their alternative counterclaims against Maluski for foreclosure by sheriff's sale and for foreclosure by equitable subrogation as moot. This order finally resolved all matters before the trial court and constitutes a final judgment. Maluski filed a timely notice

of appeal.[1]

## STANDARD OF REVIEW

We review the grant of summary judgment *de novo*. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam). When reviewing a summary judgment, we examine the record in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Traditional summary judgment is proper if the defendant (1) disproves at least one element of each of the plaintiff's claims, or (2) establishes all elements of an affirmative defense to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nwokenaka v. Greater Houston Transp. Co.*, No. 14-15-00121-CV, 2016 WL 2605734, at *2 (Tex. App.—Houston [14th Dist.] May 5, 2016, no pet.) (mem. op.).

When, as here, the trial court grants the judgment without specifying the grounds, we will affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The burden is on the non-moving party to show that each independent argument alleged in the moving party's motion was insufficient to support the trial court's judgment. *See Brown v. Hensley*, 515 S.W.3d 442, 446 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Although styled as a "Traditional and No Evidence Motion for Summary Judgment," Rushmore's and Wilmington Savings' summary judgment motion asserted only traditional arguments and sought only "traditional" summary judgment in its prayer for relief. Therefore, we discuss only the standard of review pertinent

---

[1] Maluski acknowledges that his appeal does not challenge the trial court's judgment granted in favor of Mackie Wolf Zientz & Mann, P.C. "Instead, this appeal only challenges the trial court's judgment in favor of Rushmore and Wilmington [Savings]."

to a traditional summary judgment motion.

Maluski contends the trial court's judgment should be reversed because Wilmington "did not conclusively disprove Maluski's causes of action and did not conclusively prove their own. Instead, conclusive evidence shows that Maluski's statute of limitations and claim preclusion arguments are correct."

## I.    Statute of Limitations

Maluski argues in his first issue that the statute of limitations bars a foreclosure sale of the property because Texas Civil Practice and Remedies Code section 16.035(b) requires that a non-judicial foreclosure sale must be made within four years of the cause of action's accrual, and no sale was made in this case within the required time. Maluski argues that only a judicial foreclosure can be conducted more than four years after the claim accrues pursuant to Texas Civil Practice and Remedies Code section 16.035(a).

Section 16.035(a) provides that a "person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a). A "real property lien" includes a deed of trust. *See id*. § 16.035(g)(2). Section 16.035(b) provides that a "sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." *Id*. § 16.035(b). A cause of action does not accrue until "the maturity date of the last note, obligation, or installment." *See id*. § 16.035(e). When, as here, the note or deed of trust contains an optional acceleration clause, the cause of action accrues, and the limitations period begins to run, when the "holder actually exercises its option to

accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

Therefore, a suit to foreclose on a deed of trust must be brought within four years of the exercise of the option to accelerate the note it secures. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a); *Wolf*, 44 S.W.3d at 566. And a sale of property pursuant to a power of sale in a mortgage or deed of trust must take place within four years of the exercise of the option to accelerate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b); *Wolf*, 44 S.W.3d at 566. Once the four-year limitations period has expired, both the real property lien and the power of sale to enforce the real property lien become void. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(d).

Maluski and Wilmington agree that Wilmington Savings' predecessor in interest, U.S. Bank, exercised the option to accelerate the note on December 27, 2005. Maluski and Wilmington agree that predecessor in interest PAMI timely filed its claim in intervention pursuant to Texas Civil Procedure Rule 735 on November 13, 2007, in response to Maluski's first suit.

The version of Rule 735 in place at the time PAMI filed its claim significantly differs from the current version of Rule 735. The 2007 version of Rule 735 provided that a party seeking to foreclose a lien created for a home equity loan has three options and may file: "(1) a suit seeking judicial foreclosure; (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Tex. Prop. Code § 51.002; or (3) an application under Rule 736 for an order allowing foreclosure." *See* Tex. R. Civ. P. 735, 63 Tex. B.J. 293 (Tex. 2000, repealed 2011); *Huston v. U.S. Bank Nat'l Assoc.*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.). PAMI filed pursuant to Rule 735(1) and (2) "a suit seeking judicial foreclosure" and "a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the

9

security instrument and Tex. Prop. Code § 51.002." And the federal district court "authorized [PAMI] pursuant to the Note, Security Instrument, and Tex. Prop. Code § 51.002 . . . to foreclose on the property."

Maluski and Wilmington disagree about whether it was sufficient for PAMI to *file a claim* within four years of the note acceleration in order for Wilmington to foreclose on the property and sell it, or whether a *sale* of the property had to be made within four years after the note acceleration.

Maluski argues that, because a suit for authorization pursuant to a note, security instrument, and Texas Property Code section 51.002 to foreclose on the property was an action for non-judicial foreclosure, section 16.035(b) is applicable and requires that a sale of the property be accomplished within four years of the note acceleration irrespective of whether a suit was filed within four years of the note acceleration. Conversely, Maluski argues that section 16.035(a) applies only when a suit for judicial foreclosure pursuant to Texas Rule of Civil Procedure 309 is brought. In that regard, Maluski contends that, because PAMI brought a suit for non-judicial foreclosure and received a judgment authorizing non-judicial foreclosure rather than a judicial foreclosure judgment, PAMI or any successor in interest was required to comply with section 16.035(b) and sell the property within four years of the note acceleration. According to Maluski, PAMI's November 2007 claim, although filed within the four-year limitations period, does not preserve the validity of the real property lien or Wilmington's right as successor in interest to sell the property.

Wilmington counters that, because PAMI filed as authorized by Rule 735(2) its claim "seeking a final judgment which includes an order allowing foreclosure under the security instrument and Tex. Prop. Code § 51.002" within four years of the note acceleration as required by section 16.035(a), this claim preserved

Wilmington's right as successor in interest to sell the property. Wilmington cites *Metcalf v. Wilmington Savings Fund Society, FSB*, No. 03-16-00795-CV, 2017 WL 1228886 (Tex. App.—Austin Mar. 29, 2017, pet. denied) (mem. op.), in support of its argument.

We find the analysis in *Metcalf* to be instructive. The Metcalfs obtained a loan to buy property and executed a promissory note. *Id*. at *1. The note was secured by a deed of trust in which the Metcalfs conveyed the property to the trustee to hold in trust with a power of sale. *Id*. The Metcalfs defaulted on the loan; the mortgage servicer accelerated the note on June 23, 2010, and gave notice of a foreclosure sale. *Id*. The Metcalfs filed for bankruptcy before the sale occurred and they were personally discharged in March 2011. *Id*. Another notice of acceleration was sent in May 2011 together with a notice of foreclosure sale scheduled in June 2011. *Id*. Days before the scheduled sale, the Metcalfs filed suit in state court seeking to prevent the sale and alleging that they were not timely offered a loan modification. *Id*.

The mortgage servicer filed a counterclaim on November 4, 2013, seeking a declaration that it had complied with Texas law and the terms of the deed of trust and note and was thus authorized to proceed with a non-judicial foreclosure sale of the property pursuant to Texas law and the terms of the deed of trust. *Id*. In the alternative, the mortgage servicer asked the court to sign an order foreclosing on the lien and authorizing sale of the property. *Id*.

The mortgage servicer filed a summary judgment motion on the Metcalfs' claims against it and on its counterclaim, and also requested the trial court to order that it was authorized to proceed with foreclosure of the property in accordance with the terms of the deed of trust. *Id*. The trial court signed an order granting summary judgment and ordering that the mortgage servicer "may lawfully proceed with the

11

foreclosure sale of the property at issue in this litigation pursuant to the terms of the Deed of Trust and § 51.002 of the Texas Property Code." *Id*. at *2.

The successor mortgage servicers did not sell the property at a foreclosure sale during the next two years; instead, they sent the Metcalfs several notices asking them to pay balances due on the note. *Id*. The Metcalfs did not make any payments on the note and sought bankruptcy protection. *Id*. After the bankruptcy proceedings were dismissed with prejudice in July 2015, the successor mortgage servicer sent another notice of acceleration of the note and included a notice that a foreclosure sale was scheduled for September 1, 2015. *Id*. On August 31, 2015, the Metcalfs filed suit seeking a temporary restraining order to prevent the sale. *Id*. The trial court did not grant the requested relief, the public sale of the property went forward, and Wilmington acquired the property. *Id*.

The Metcalfs amended their petition to allege that the mortgage servicer and Wilmington, referred to as Lender Defendants, had "'lost any lien or claim to the [P]roperty through the running of limitations by failing to file a lawsuit or foreclose within four years of accelerating the debt' on June 23, 2010." *Id*. "The Metcalfs sought a declaration that limitations had run on the Lender Defendants' right to foreclose several months before the September 2015 sale and asked the trial court to set aside the sale" and quiet title to the property in their name. *Id*. The trial court granted the Lender Defendants' summary judgment motion and declared that right and title to the property was fully vested in Wilmington pursuant to the September 1, 2015 substitute trustee's deed. *Id*.

On appeal, the Metcalfs argued that the trial court erroneously concluded that the Lender Defendants had the legal right to sell the property, and that the real property lien on the property, along with the power of sale to enforce that lien, were not void due to the expiration of the four-year limitations period. *Id*. The Metcalfs

argued that the Lender Defendants' predecessor's suit to foreclose on the deed of trust on November 4, 2013, by filing a counterclaim for an order of foreclosure in the 2011 suit did not operate to preserve the validity of the deed of trust, or the Lender Defendants' right to sell the property pursuant to the terms of the deed of trust. *Id*. at *3. The Austin Court of Appeals rejected the Metcalfs' arguments and affirmed the trial court judgment. *Id*. at *3-5.

The court of appeals stated that the "November 4, 2013 counterclaim was filed within four years of June 23, 2010, and the trial court's summary-judgment order grants the relief the Lender Defendants sought—an order confirming that they 'may lawfully proceed with the foreclosure sale of the property at issue in this litigation.'" *Id*. at *4. The court stated that the plain language of section 16.035(a) does not require that an actual foreclosure occur within the four-year limitations period. *Id*. Instead, this provision requires only that the party seeking foreclosure bring suit not later than four years after the date the cause of action accrues. *Id*.

The court rejected the Metcalfs' argument that "the term 'suit for . . . foreclosure of a real property lien' in . . . section 16.035(a) refers solely and exclusively to a suit that requests and results in a judgment that orders a sheriff's or constable's sale pursuant to rule 309 of the Texas Rules of Civil Procedure, what they refer to as 'judicial foreclosure.'" *Id*. The court therefore rejected the Metcalfs' contention that the predecessor's "suit that resulted in a judgment ordering a sale pursuant to the Deed of Trust and Texas Property Code section 51.002, which they refer to as 'non-judicial foreclosure,' did not prevent the Deed of Trust from becoming void four years after acceleration of the Note." *Id*.

The court observed that, even accepting the Metcalfs' contention that "section 16.035(a) refers strictly to a suit seeking a judgment of foreclosure by sheriff's or constable's sale, the Lender Defendants' counterclaim asking for such relief, albeit

13

in the alternative, qualifies." *Id.* The court was "unpersuaded by the Metcalfs' contention that the ultimate form of the trial court's order—an order that the lender could proceed with a foreclosure sale pursuant to the terms of the Deed of Trust— eradicated the alternative request for an order foreclosing on the lien." *Id.*

The court "also observe[d] that the statute does not itself define a 'suit for the foreclosure of a real property lien' to mean only a suit seeking an order of sale by a sheriff or constable as provided in Texas Rule of Civil Procedure 309." *Id.* And the court stated that there is "no objective that would be attained by construing section 16.035(a) to provide that a suit seeking a rule 309 judgment of foreclosure prevents a deed of trust from becoming void while a suit to confirm that the holder has authority to foreclose on the same deed of trust does not." *Id.* Thus, the court held that the predecessor's counterclaim seeking confirmation of the right to foreclose under the deed of trust and, alternatively, an order of foreclosure served to prevent the four-year limitations period in section 16.035 from expiring and the deed of trust and power of sale from becoming void. *Id.* at *4-5.

Another court also has agreed that "the text of section 16.035(a) does not limit its applicability to claims for judicial foreclosure." *Babineaux v. Citimortgage, Inc.*, No. 02-17-00124-CV, 2017 WL 6616239, at *6 (Tex. App.—Fort Worth Dec. 21, 2017, pet. denied) (mem. op.). With regard to a non-judicial foreclosure, "[t]he plain language of section 16.035(a) does not require that the actual foreclosure occur within the four-year limitation period, but rather, requires only that the party seeking foreclosure 'bring suit . . . not later than four years after the day the cause of action accrues.'" *Slay v. Nationstar Mortg., L.L.C.*, No. 2-09-052-CV, 2010 WL 670095, at *1-3 (Tex. App.—Fort Worth Feb. 25, 2010, pet. denied) (mem. op.).

Here, the undisputed summary judgment evidence shows that Wilmington Savings' predecessor in interest, PAMI, brought suit to foreclose on the property on

November 13, 2007, by filing a claim for an order permitting foreclosure on the property pursuant to the security instrument, or an order for judicial foreclosure in Maluski's 2006 suit. As in *Metcalf*, Maluski contends that PAMI's claim for non-judicial foreclosure, although filed within four years of the note acceleration, does not preserve the validity of the real property lien and, correspondingly, Wilmington's right to sell the property. We disagree with Maluski's interpretation that only a suit and judgment for judicial foreclosure preserves Wilmington's right to foreclose and sell the property. *See Metcalf*, 2017 WL 1228886, at \*3-4.

Section 16.035(a)'s text does not limit its applicability to claims for judicial foreclosure. *Babineaux*, 2017 WL 6616239, at \*6; *see Metcalf*, 2017 WL 1228886, at \*4. And with respect to non-judicial foreclosures, "[t]he plain language of section 16.035(a) does not require that the actual foreclosure occur within the four-year limitation period, but rather, requires only that the party seeking foreclosure 'bring suit . . . not later than four years after the day the cause of action accrues.'" *Metcalf*, 2017 WL 1228886, at \*4; *Slay*, 2010 WL 670095, at \*1-3.

Accordingly, we conclude that (1) PAMI's November 13, 2007 claim, seeking an order permitting foreclosure of the property under the security instrument and an order for judicial foreclosure, prevented the four-year limitations period in section 16.035 from expiring and the real property lien and power of sale from becoming void; (2) Wilmington or a predecessor in interest was not required to foreclose on and sell the property within four years of the note acceleration; and (3) the trial court properly concluded that the statute of limitations does not bar the foreclosure and sale of the property and, thus, properly granted summary judgment with regard to limitations. In light of this disposition, we need not address Maluski's alternative argument that any statute of limitations period cannot be revived under Texas Civil Practice and Remedies Code section 16.069.

We overrule Maluski's first issue.

## II.     Res Judicata

Maluski argues in his second issue that the trial court's judgment should be reversed because conclusive proof established Maluski's claim preclusion argument.

The doctrine of res judicata, or claim preclusion, bars a second action by parties and their privies on matters that were actually litigated in a previous suit, as well as claims which could have been litigated in the prior suit through the exercise of diligence. *Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 58 (Tex. 2006). Therefore, for res judicata to apply, the following elements must be established: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007); *see Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 755 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Maluski and Wilmington do not dispute that elements one and two are established in this case.   Their disagreement centers around the third element. Maluski contends that Wilmington's "current actions regarding foreclosure" are based on the same claims as were raised or could have been raised in the first suit in federal court.  He contends that the pleadings in the federal suit "show that claims for both judicial *and* non-judicial foreclosure of Maluski's home were actually raised;" and, "even if a particular variety of foreclosure claim had not been actually raised in the federal action, the bar would still apply because such claims *could have been raised through reasonable diligence*."

We disagree with Maluski and conclude that the third element is not established.  The issue of whether limitations barred Wilmington or its predecessors

from actually selling the property was not litigated in the federal suit. This issue could not have been litigated in the exercise of diligence because no facts or circumstances in that suit raised the issue of whether the statute of limitations might bar a foreclosure sale in the future.

Maluski filed suit in 2006, arguing that the note and lien are invalid because they violate the Texas Constitution. In response, PAMI filed a claim seeking an order permitting foreclosure on the property pursuant to the security instrument or an order for judicial foreclosure. The federal court's judgment authorizing PAMI to foreclose was signed within four years of the note acceleration. At the time, no issue was raised, and no issue could have been raised regarding whether section 16.035(b) would bar PAMI or any successor in interest form selling the property pursuant to the judgment entered within four years of the note acceleration.

Additionally, we reject Maluski's argument that Wilmington essentially used "the state lawsuit as a means of obtaining a new right to foreclose on Maluski's property." There is no new right Maluski obtained as our analysis of Maluski's first issue evidences. The trial court judgment confirmed the right to sell already awarded in the federal court judgment by stating that Rushmore and Wilmington Savings "may proceed with foreclosure as authorized in the February 5, 2009 Final Judgment from Civil Action No. H-07-055 . . . ."

Accordingly, the third element necessary for res judicata to apply is not established, and we conclude that the trial court properly granted summary judgment with regard to Maluski's claim preclusion argument.

We overrule Maluski's second issue.

17

## CONCLUSION

We affirm the trial court's judgment.


    /s/     William Boyce
               Justice


Panel consist of Justices Boyce, Jamison and Brown.